Filed 7/29/14  In re Sally L. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re SALLY L., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY L. et al.,<br><br>        Defendants and Appellants. | A139891<br><br>(Contra Costa County Super. Ct. No. J12-01442) |
| In re BRIANNA S., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY L.,<br><br>        Defendant and Appellant. | A140214<br><br>(Contra Costa County Super. Ct. No. J12-00354) |

In these consolidated appeals, Kimberly L. (Mother), the mother of Brianna S. (born August 2009) and Sally L. (born October 2012), and Marc L. (Father), Sally's

1

father, appeal orders terminating their parental rights.[1]  They contend the juvenile court erred in failing to apply the continuing beneficial relationship exception to parental termination.  We affirm.

## BACKGROUND

In March 2012, Brianna was detained by the juvenile court.  Mother pled no contest to allegations that she has a substance abuse problem impairing her ability to care for and protect Brianna and that she left Brianna in the care of her step-grandfather, who had sexually molested Mother when she was a child.  Mother was in a residential treatment program at the time of Brianna's detention but then left the program.  She entered a detoxification program but tested positive for amphetamine use in April.  At the time of the disposition hearing in May, Mother was attempting to enter another residential treatment program.  The juvenile court declared Brianna a dependent of the juvenile court and ordered reunification services, including supervised visits.

In October 2012, Sally was born.  A few days later, she was detained by the juvenile court.  Mother pled no contest to the allegations that she tested positive for methamphetamine at least four times during her pregnancy and that she was abusing methamphetamine and not able to provide housing for Sally's sibling.  Father pled no contest to the allegation that he has a past history of methamphetamine abuse.  The juvenile court declared Sally a dependent of the juvenile court and ordered reunification services, including visitations.

Mother had begun a new residential treatment program in October and remained in this program.  In December, the juvenile court ordered an additional six months of reunification services for Brianna.  The court also authorized Sally's placement with Mother until she completed the program and with Mother and Father afterward.  Mother completed the program and began outpatient treatment in January 2013.  In February, Father began an outpatient treatment program.

---

[1] The parental rights of Brianna's father were also terminated.  He is not a party to this appeal.

In February and March 2013, Mother missed several sessions at her outpatient program and in March she admitted using methamphetamine. In April, Mother missed additional sessions, yet denied missing these sessions to the Contra Costa County Children and Family Services Bureau (Bureau). In February, Father tested positive for THC and also missed meetings with his outpatient program.

The Bureau removed Sally from her placement with Mother and Father and recommended termination of services with respect to both minors. Neither Mother nor Father appeared at the combined review hearing to contest this recommendation. The juvenile court terminated reunification services and set a Welfare and Institutions Code section 366.26[2] hearing date. Mother and Father were notified by mail of their right to petition for extraordinary writ relief.

The Bureau recommended parental rights be terminated for both Brianna and Sally. The Bureau's section 366.26 hearing report on Brianna stated she "thrives on stability and security" and was doing very well in her current foster home. The foster family wanted to adopt her and the adoption was "highly likely." Mother was loving and appropriate during supervised visits and some of the visits were reported to be positive. However, in connection with more recent visits Brianna was upset and needed reassurance that she would be returning to her foster family after the visit. The social worker wrote, "Although Brianna appears to love/like her mother, there is something about contact with her mother that is disturbing and fearful for Brianna. During supervised visits, she consistently needs to know that she will be returning back to safety with her foster parents." During visits taking place after her placement with her current foster family, Brianna asked to go home to her "mommy," by which she meant her foster mother.

The Bureau's report on Sally stated she was in the same foster home as Brianna. The placement had gone "very well," Sally appeared to be happy in the home, and the foster family was ensuring her emotional and physical needs were met. The foster family

---

[2] All undesignated section references are to the Welfare and Institutions Code.

was committed to adopting Sally as well as Brianna. The report noted Sally's parents acted affectionately and appropriately during visitations. Before Sally was removed from the placement with mother and father, a Bureau visit found her "well cared for, clean, [and] in cute clothes."

Neither Mother nor Father presented any evidence at the section 366.26 hearings. The juvenile court terminated Mother's parental rights with respect to both minors, and Father's with respect to Sally.

## DISCUSSION

Mother and Father's only contention on appeal is the juvenile court erred in failing to conclude the continuing beneficial relationship exception (§ 366.26, subd. (c)(1)(B)(i)) applies to prevent termination of their parental rights.

"At a hearing under section 366.26, the court must select and implement a permanent plan for a dependent child. Where there is no probability of reunification with a parent, adoption is the preferred permanent plan. [Citation.]" (*In re K.P.* (2012) 203 Cal.App.4th 614, 620.) Section 366.26, subdivision (c)(1), provides that if the juvenile court finds the child adoptable, "the court shall terminate parental rights and order the child placed for adoption" unless: "(B) The court finds a compelling reason for determining that termination would be detrimental to the child [because] . . . [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

To establish the beneficial relationship exception, a parent must demonstrate "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The exception does not

4

require "proof that the child has a 'primary attachment' to a parent or that the noncustodial parent has maintained day-to-day contact with the child. [Citations.]" (*In re S.B.* (2008) 164 Cal.App.4th 289, 300.) However, "the parent must show more than 'frequent and loving contact' [citation], and be more to the child than a mere 'friendly visitor or friendly nonparent relative.' [Citation.]" (*In re Helen W.* (2007) 150 Cal.App.4th 71, 81.)

There is a split of authority regarding whether an appellate court reviews a challenge involving the beneficial relationship exception for substantial evidence, abuse of discretion, or a combination of the two. (See *In re K.P., supra,* 203 Cal.App.4th at pp. 621-622.) We need not weigh in on this debate as our conclusion is the same under any of these standards.

The only evidence presented at the section 366.26 hearing for each minor — the Bureau's reports — demonstrated both Brianna and Sally were thriving with their foster family and would likely be adopted by that family if parental rights were terminated. Reunification services were terminated because both Mother and Father recently tested positive for drugs and had failed to consistently attend outpatient programs.

With respect to Brianna, while Mother was loving and appropriate during visitations, the more recent visitations were not positive for Brianna and she asked to be returned to her foster mother, whom she called "mommy." Although Mother argues such behavior is not evidence of the absence of a strong bond between Mother and Brianna, the beneficial relationship exception requires affirmative evidence of such a bond, which Mother did not provide. Instead, the evidence shows Brianna looked to her foster parents for security and comfort. Substantial evidence supports the juvenile court's finding that Mother failed to establish the beneficial relationship exception with respect to Brianna, and this finding was not an abuse of discretion.

The findings with respect to Sally are also supported by substantial evidence and are not an abuse of discretion. At the time of the hearing, Sally had spent the majority of her young life out of her parents' custody. Although the Bureau's report stated Mother and Father were loving and appropriate with Sally during visitations, there was no

evidence either parental relationship was so beneficial to Sally as to outweigh the permanency and stability she would gain in an adoptive home. (See *In re Angel B.* (2002) 97 Cal.App.4th 454, 466 ["A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent."].)

DISPOSITION

The orders are affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.